is taken under advisement, and the court will proceed to the sixth case, Chambers v. Sood. Mr. Fox. Thank you, Your Honor. Good morning, Your Honors, and may it please the court. My name is David Fox, and I represent the plaintiff appellant in this case, Mr. Jonathan Chambers. The district court dismissed this case for failure to exhaust administrative remedies under the Prison Litigation Reform Act, even though it is undisputed that Mr. Chambers timely filed a proper grievance concerning the subject matter of this lawsuit, and even though the record makes indisputable that that grievance was returned to Mr. Chambers unreviewed in violation of the prison grievance procedures. Under the Illinois grievance procedures, what should have happened when Mr. Chambers filed his grievance is that the grievance officer should have reviewed it. They provide that the grievance officer shall review the grievance. The grievance officer should have recommended a finding on the grievance. They provide that the grievance officer shall do that, and the grievance officer should have made that recommendation to the chief administrative officer, who should have communicated a decision. The officer has two months to conduct that review and make recommendations, but your client was transferred to a different facility inside of those two months, and so the grievance officer really had nothing else that could be done, because no relief could be granted at the prior institution because your client was now at a different institution, and that's what resulted in the return of the grievance with the notation that it had not been concluded before the transfer occurred, and so you've got to take it to the ARB. So it is certainly true, Your Honor, that the return occurred before the two-month deadline. However, nothing in the grievance procedures authorized a grievance to be unreviewed and returned to the prisoner, simply because the prisoner was later transferred. Well, there's nothing that the grievance officer can do by way of granting relief, because the prisoner is no longer there. So, Your Honor— The prisoner's at a different institution, and so that interrupts the grievance process, and it was quite a reasonable interpretation of the regulations for the grievance officer to say, you're going to have to take this to the review board under the procedure that's permitted for grieving something that occurred at a predecessor institution. So, Your Honor, it has not been argued in this case that there was nothing further that the grievance officer could do, and that's for a very good reason, which is that if it's true that there was nothing further that the grievance officer could do to provide relief to Mr. Chambers, then Mr. Chambers was not required to continue pursuing the grievance. And under this court's precedent, he only needed to file a single grievance. I actually don't think it's correct that there was nothing further that the grievance officer could do. Well, the grievance officer couldn't get him the medication that he was asking for at that institution, because he's no longer at that institution. But the grievance officer could have made a finding that he was entitled to the medication and should have been given it, which would have helped to speed him obtaining the medication at his new institution. And had that happened, Mr. Chambers— That ignores completely the nature of this grievance. It's a medical grievance. You can't determine the merits of a medical grievance without the prisoner being at the facility and to be able to consult with those who are treating him. You have to construe these regulations in the context in which they're governing and they're controlling a process, an interactive process, between the prison inmates and the institution to get prisoner needs met. And the prisoner's needs cannot be met at Stateville's intake facility anymore. He's at a different facility. And so what the grievance officer did here was quite a reasonable construction of the grievance procedure. Your Honor, nothing about Mr. Chambers' transfer prevented the grievance officer from inquiring with the medical facility, from looking into the medical records. Indeed, the administrative review board was able to do just that once Mr. Chambers filed a second grievance. Right, but no adjudication can be made. She can't make any recommendations to the chief administrative officer about findings and recommendations for a course of action when the inmate is no longer there. Your Honor, respectfully, I don't think that's correct. She could have recommended that there was a deprivation of medical care— Based on what? He's not there for anybody to examine whether he needs this medication. You're ignoring the context. Your Honor, even when he filed a grievance with the administrative review board, they did not examine him. What the record shows is that they went back and looked at the medical records, and they looked at the records of what had happened when Mr. Chambers was first seeking treatment, and they came to a conclusion about whether he should have gotten treatment or not. That did not require an examination of Mr. Chambers, and nor would it have required the grievance officer to arrange an examination of Mr. Chambers. All that the grievance officer needed to do was to look at the records of Mr. Chambers. When the review occurred pursuant to his later grievance or his later action in front of the review board, they determined that the medication was not then medically necessary because his symptoms had resolved. That was a contemporaneous determination. It wasn't a retrospective determination. These medical decisions always have to be made with the contemporaneous facts on the ground. You can't the context of this grievance and the nature of this process. Your Honor, I disagree with that construction, both of what the administrative review board did and of what the grievance office here could have done. When the administrative review board looked at this, what they looked at was the records of what had happened during the disputed medical appointment. And the merits of that determination are not before us because the district court never got to it, because the district court held that the administrative regulations were not complied with. But in fact, what the administrative review board found was that he was not prescribed the medication at the time. That was something that the administrative review board was fully able to do without examining Mr. Chambers, and it was something that the grievance office at Stateville could have done without examining Mr. Chambers. Mr. Chambers was deprived of medical care for 30 days or nearly 30 days while he was at Stateville. That was a matter that occurred at Stateville that the grievance office at Stateville was fully capable of examining. And while it's true that they couldn't then treat Mr. Chambers, who had been transferred, they could have taken steps to ensure that this didn't happen again, to ensure that prisoners who saw doctors were given the medication that they needed. There was plenty that the grievance office could have done, which is why the other side has not contended that no relief was available. And if they were correct that no relief was available, then again, Mr. Chambers would have been excused from filing his grievance because the prison, by transferring him, would have terminated the ability of the grievance process to provide him relief. We're not contending that. They aren't contending that. But they wouldn't win if that were correct. Mr. Fox, let me ask you to react to what troubles me a little bit about your argument, or the concern that I have is, you read the regulations carefully and you've briefed them carefully. But you're trying to hold the facility to such literal compliance with them that they have no flexibility whatsoever in a circumstance where an inmate's transferred. And as Judge Sykes is saying, in the context of being concerned about medical care. Okay, but they did tell him, you know, if you want to go further here, you want to appeal, go to the ARB, go to the board. That's in close keeping, is it not, with the process in the regulations? In other words, it's not as if they said, you know, if you still have an issue, you need to send a letter to the governor. Where he would have said, the governor? What's the governor have to do with this? But the ARB is a built-in, you know, part of the administrative process. So they told him what to do and he didn't do anything. So, Your Honor, two responses to that. First of all, I think this idea that it was close enough to what the regulations required, it's sort of substantial compliance. A prisoner certainly would not be heard to make that argument in saying that he had complied with the grievance regulations. The prisoner is expected to strictly comply with the grievance regulations in order to exhaust. And the prison should be held to the same standard. The regulations provide what the prison will do and what the prisoner will do. And in this case, the prison violated the regulations and under this court's precedent, that means that Mr. Chambers is deemed to have exhausted. If the prison thought that a more efficient system were to say that if a prisoner is transferred, then the prisoner should be required to start over with the ARB directly, the prison could, or Illinois, could certainly promulgate a new regulation to that effect. So where have we held that slight noncompliance violates the law here? By a prisoner, you mean? Yeah. So in other words, you say in your reply brief, I think this is the argument you have to make and you're making it. Prison officials may not via memorandum impose their own pre-suit exhaustion requirements beyond those imposed by federal law itself. But according to what authority? So, Your Honor, I think that the closest circumstance that this court has addressed that I'm aware of was a circumstance where Illinois had construed their grievance regulations to provide that if a prisoner filed an emergency grievance and that grievance was denied because there was no emergency, Illinois had decided that the prisoner then was required to start over by again, reiterated that the grievance procedures did not require the prisoner to start over with a new grievance. And subsequently, Illinois revised their grievance procedures after this case, after the 2014 date of this case to change that. So that in fact, now a prisoner does need to file a new grievance. And I think that's the way this should work. If the prison wants to impose an additional requirement, they can certainly do that, but there's a procedure for it, which is to amend the prison regulations. If there are no further questions right now, I'll reserve what little time I have for rebuttal. I'll give you some time. Thank you, Your Honor. Mr. Holting. Good morning, Your Honors. May it please the Court? My name is Dan Holting and I represent Dr. Sood in this appeal. Mr. Chambers did not exhaust his administrative remedies prior to filing this lawsuit against Dr. Sood. As the Illinois Administrative Code outlines, there are three requirements for all prisoners to follow to exhaust their administrative remedies. One, they must attempt to informally resolve the incident through a counselor. Two, if the counselor cannot resolve the incident, they must file a written grievance with a grievance officer. And three, and crucially, if an inmate is unsatisfied with the grievance officer's resolution, he must appeal in writing to the director within 30 days. Mr. Chambers properly completed steps one and two of this by filing his grievance on March 9th, but he failed to complete that final step before filing his lawsuit. And this is despite the explicit instructions outlined in the Administrative Code and the explicit instructions in the grievance, explicitly telling Mr. Chambers to appeal this decision if you are unsatisfied. Rather than follow the grievance officer's instructions and the process dictated by the Illinois Code, Mr. Chambers jumped the gun by filing this lawsuit four days after the decision or the response was sent by the grievance office. As this court held in Pozo v. McCautry, a prisoner who does not fully properly fulfill each step in a state's administrative process fails to exhaust his remedies and is foreclosed from litigating. Further, in Dixon, this court held that a prisoner who fails to appeal the response of a grievance office fails to exhaust and any claims based on said grievance should be dismissed. And again, even if Mr. Chambers was dissatisfied with his response, he was required to appeal in accordance with the code. This court has held that even if the process appears to be futile, they're still required to go through with the process and appeal. And lastly, any argument that the avenue to appeal was unavailable to Mr. Chambers is also without merit. Again, the Illinois Administrative Code provides an avenue for him to appeal and he was explicitly advised in the memorandum from the grievance office how to appeal and his own actions show that he appealed this. On June 2, 2014, Mr. Chambers sent directly to the ARB a grievance that they construed as an appeal attaching the memorandum from the grievance office and complaining of the treatment by Dr. Seward. However, this appeal was not fully resolved until November of 2014, well after he filed his lawsuit. As such, this court should find that plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. And moving on to plaintiff's second argument, for the sake of section 1997EA, Mr. Chambers brought his lawsuit against Dr. Seward prior to the November 10, 2014 resolution of his grievance. First and foremost, this court should not consider any arguments made by Mr. Chambers that he did not bring his lawsuit against Dr. Seward until February 9, 2016 when he filed his second amended complaint because that argument was not presented to the district court. It's long-standing precedent of this court not to consider arguments not made at the district court as appellants are not entitled to a second bite at the apple. But if this court does look past Mr. Chambers' waiver, it's clear that he brought his lawsuit against Dr. Seward on April 7, 2014 when he filed his initial lawsuit. Section 1997EA states that no action shall be brought with respect to prison conditions until such administrative remedies as available are exhausted. This court held in forward that if a prisoner brings suit before exhaustion, the lawsuit must be dismissed even if exhaustion was completed after the lawsuit was filed and before entry of the final judgment, as was the case here. Here, despite not knowing Dr. Seward's name, Chambers brought his lawsuit against him on April 7, 2014. This is especially true, and this was admitted by Mr. Chambers' counsel at the district court in response to the motion dismissed where he stated, quote, the crux of Chambers' lawsuit since its inception on April 7, 2014 was Dr. Seward's deliberate refusal on March 1, 2014 to prescribe medication. Unless the panel has any questions, we ask that this court affirm the district court's ruling dismissing plaintiff's lawsuit for failure to exhaust administrative remedies. Thank you. Thank you. You may have two minutes, Mr. Fox. On the first argument, I think it is clear from the Illinois regulations that notwithstanding what the memorandum told Mr. Chambers, he simply could not appeal. The procedures provide that you can appeal after receiving a response from the chief administrative officer, and Mr. Chambers never received a response from the chief administrative officer, most clearly because the response he received was not from the chief administrative officer. And so there was no possibility of an new grievance, and that is a crucial distinction that the Dixon case that opposing counsel cites makes especially clear, because in Dixon what the court said is that, yes, the inmate there had to appeal, but only because the court construed the grievance procedures to allow an appeal as distinct from a new grievance under the specific facts of that case where the prison ruled for the inmate and then failed to provide the relief it promised. And the court was clear that it would not have required a new grievance if a new grievance were the only available administrative remedy. Here, that's where we are. Mr. Chambers certainly could file a new grievance, and he did ultimately file a new grievance, but he could not file an appeal, and an appeal is all that is required to exhaust under the prison litigation reform act. Very briefly on the second argument, for statute of limitations purposes, this court's precedent is extremely clear that bringing a claim against a John Doe defendant is not sufficient to bring a claim against the named defendant. No reason is apparent why the same rule should not apply in the context of the prison litigation reform act, particularly considering this court's decisions under Barnes and Cannon. Certainly, we acknowledge that this point was not raised below. Almost by definition, this point will never be raised in the district court, because if trial counsel were aware of the issue, they would simply file a new lawsuit instead of an amended complaint. If the court is going to clear up what I think is clear error under Barnes and Cannon, it's going to have to do so in a forfeited case, and we submit that the interests of justice require it. Thank you very much. If Mr. Fox. The case is taken under advisement. The court will stand in recess. Thank you.